IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-001738-WYD-MEH

JACQUELINE BIRDSALL,

Plaintiff,

v.

ROANOKE COMPANIES GROUP, INC., now known as BRTT, INC.,
ROANOKE COMPANIES GROUP, INC., Individually and as Successor in Interest to
ROANOKE COMPANIES GROUP, INC., now known as BRTT, INC.,
HOME DEPOT U.S.A., INC.,
AEROFIL TECHNOLOGY, INC.,

Defendants.

_____

ROANOKE COMPANIES GROUP, INC., now known as BRTT, INC.,
ROANOKE COMPANIES GROUP, INC., Individually and as Successor in Interest to
ROANOKE COMPANIES GROUP, INC., now known as BRTT, INC.,

Cross-Plaintiff,

v.

SLR, INC.,

Cross-Defendant.

_____

**ORDER**
_____

I.      INTRODUCTION

THIS MATTER comes before the Court on a Partial Motion to Dismiss Plaintiff's

Amended Complaint Pursuant to Rule 12(b)(6) (ECF No. 56), filed August 13, 2010, by

Defendants Roanoke Companies Group, Inc., n/k/a BRTT, Inc. ("Roanoke") and Home

Deport U.S.A., Inc. ("Home Depot") (collectively referred to as "Roanoke Defendants"). Plaintiff filed a response to the motion on October 12, 2010, and an October 29, 2010, Roanoke Defendants filed their reply.

II.     BACKGROUND

This products liability case was originally filed in this Court on August 17, 2007. The case was transferred to Multidistrict Litigation in Georgia and then remanded back to this Court in January 2010. On July 27, 2010, the Plaintiff filed her Amended Complaint.

In the Amended Complaint, Plaintiff asserts eight claims for relief. The Roanoke Defendants have moved to dismiss the following three claims: (1) Gross Negligence/Willful and Wanton Conduct; (2) Violations of the Consumer Product Safety Act, 15 U.S.C. § 2064(b)(2); and (3) Violations of the Colorado Consumer Product Safety Act ("CCPA").

In response to the Roanoke Defendants' Partial Motion to Dismiss, the Plaintiff agreed to withdraw her claims for both Gross Negligence/Willful and Wanton Conduct and Violation of the Consumer Product Safety Act. However, Plaintiff requests that the dismissal of these claims be without prejudice.

By way of background, this is a products liability case brought by a consumer who allegedly suffered injuries due to her exposure to a product called Stand n' Seal Spray On Grout Sealer. (Am. Compl. ¶ 27.) The Plaintiff alleges that the Defendants, including the Roanoke Defendants, developed the warnings and instructions for the product, and neither accurately or fully disclosed the contents and hazards of the product nor provided accurate instructions for safe use. (Am. Compl. ¶ 17.) Plaintiff further alleges that Defendant Roanoke did not adequately test, inspect or conduct adequate quality control

-2-

to make sure the product was safe for use and that Defendant Home Depot learned of the product hazard but failed and neglected to protect the Plaintiff from foreseeable harm.  (Am. Compl. ¶ 22.)  Further, Plaintiff asserts that all Defendants had actual knowledge of the product's defects but failed to provide adequate warnings, which resulted in the injuries to the Plaintiff as well as posed a danger to the general public. (Am. Compl. ¶ 25.)

### III. ROANOKE DEFENDANTS' PARTIAL MOTION TO DISMISS

#### A. Plaintiff's Claims for Gross Negligence/Willful and Wanton Conduct and Violation of the Consumer Product Safety Act

In their motion, the Roanoke Defendants seek dismissal of these two claims pursuant to Fed. R. Civ. P. 12(b)(6).  In her response to the motion to dismiss, Plaintiff agreed to withdraw these claims, but requests that the dismissal be without prejudice.

Fed. R. Civ. P. 41(a) permits voluntary dismissal of an action without prejudice upon the plaintiff's request.  Under Rule 41(a)(1)(I), a plaintiff may dismiss without prejudice a claim or an action if the defendant has not yet answered the complaint or moved for summary judgment.  Under Rule 41(a)(2), a plaintiff may dismiss a claim or action without prejudice upon an order of the Court.

##### 1. Standard of Review

Rule 41(a)(2) permits a district court to dismiss an action without prejudice "upon such terms and conditions as the court deems proper. " *Am. Nat'l Bank & Trust Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir.1991).   "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354,

357 (10th Cir.1996) (quotation omitted).  These matters fall within the district court's discretion and "[r]eversal requires a clear abuse of discretion."  *Am. Nat'l Bank & Trust Co.*, 931 F.2d at 1412.  But "[a]bsent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal."  *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir.1997).  Prejudice can include factors such as "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present state of litigation."  *Id.*

Fed. R. Civ. P. 41(b) permits a defendant to move to dismiss the action "if the plaintiff fails to prosecute or . . . comply with these rules or a court order."  Fed. Civ. P. 41(b).  A dismissal order pursuant to Rule 41(b) operates as an adjudication on the merits, unless the dismissal order states otherwise.  Additionally, a federal district court is vested with inherent power to dismiss an action *sua sponte* for plaintiff's failure to prosecute with reasonable diligence.  This power is necessary to prevent undue delays in the disposition of pending cases, docket congestion, and the possibility of harassment of a defendant.  *Link v. Wabash R. Co.,* 370 U.S. 626, 630 (1962)*.*

        2.        <u>Analysis</u>

In this case, the Roanoke Defendants moved to dismiss Plaintiff's claims for Gross Negligence/Willful and Wanton Conduct and violations of the Consumer Product Safety Act.  In Plaintiff's response, Plaintiff merely stated that she agreed to withdraw these claims but failed to offer any additional support or arguments as to legitimacy of the claims.  Therefore, I find that a dismissal is appropriate pursuant to Rule 41(b) for failure to prosecute.

In considering whether to dismiss the claims with or without prejudice, I find that, at this time, a dismissal without prejudice is appropriate. Based on my review of the record, I do not find that the Roanoke Defendants have suffered legal prejudice. I find no evidence that Plaintiff is seeking dismissal of these claims in an effort to delay this action. I further determine that the Roanoke Defendants have not expended significant efforts or resources in defending these claims. Moreover, this action is in the early stages of litigation, thus the Roanoke Defendants have not been prejudiced in expending resources for trial preparation on these claims. However, in dismissing this claim without prejudice, the Plaintiff is on notice that it is fully within my discretion to dismiss one or both of these claims with prejudice should they be re-filed at some point in the future and should I later determine that there has been a failure to prosecute based on undue delay. Accordingly, I find that Plaintiff's Gross Negligence/Willful and Wanton Conduct claim and her Consumer Product Safety Act claim are dismissed without prejudice.

      B.      Plaintiff's Claim for Violation of the CCPA

           1.      Standard of Review

In ruling on a Motion to Dismiss pursuant to 12(b)(6), the standard used to be that the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied,* 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton,* 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)). Thus, until recently, a dismissal was only warranted where "it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle him to relief." *The Ridge at Red Hawk, L.L.C. v. Schneider,* 2007 WL 1969681 at *3 (quoting

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

"However, the Supreme Court recently decided that 'this observation has earned its retirement,' and it has prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007)). "The Court explained that a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. at 1974). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.*

The Colorado Supreme Court has stated that the "CCPA was enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'" *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146 (Colo. 2003). The *Rhino Linings* Court went on to say that "[t]he CCPA deters and punishes businesses which commit deceptive trade practices in their dealings with the public by providing prompt, economical and readily available remedies against consumer fraud." *Id.* These "[r]emedies include injunctive relief, civil penalties including treble damages, and attorney fees." *Id.*

Also, in *Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998), the Colorado Supreme Court instructed that in order for a plaintiff to sustain a private cause of action under the CCPA, he or she must show:

(1) that the defendant engaged in an unfair or deceptive trade practice; (2)

>that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Id.*; see also *Martinez v. Lewis,* 969 P.2d 213, 221 (Colo. 1998).  The CCPA is not limited to "consumers" but to anyone that can meet the above elements.  *Hall*, 969 P.2d at 231.

        2.    <u>Analysis</u>

Here, Plaintiff alleges a violation of the CCPA for unfair or deceptive trade practices against all Defendants.  In the pending partial motion to dismiss, Roanoke Defendants have moved to dismiss this claim by asserting that: (1) the Plaintiff failed to sufficiently allege unfair or deceptive trade practices under the CCPA and (2) the Plaintiff's complaint is not pled with particularity as to sufficiently allege a public injury to consumers as a whole.

        a.    <u>Whether Plaintiff's Allegations Sufficiently Allege Unfair or Deceptive Trade Practices under the CCPA</u>

"Section 6-1-105(1)(e) [of the CCPA] requires that to establish a deceptive trade practice, the plaintiff must show that a defendant 'knowingly makes a false representation.'" *Rhino Linings,* 62 P.3d at 147.  The *Rhino Linings* Court went on to conclude "that a false representation must either induce a party to act, refrain from action, or have the capacity or tendency to attract consumers." *Id.*  Therefore, in order for a plaintiff to establish a deceptive trade practice set forth in Section 6-1-105(1)(e), she must establish "either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not." *Id.* at 148.

In the Amended Complaint, Plaintiff sets forth allegations of misrepresentations or

false representations that induced Plaintiff to act.  Specifically, paragraphs 13, 24, 25, and 27 of the Amended Complaint read as follows:

> 13. On August 25, 2005, Plaintiff used and was exposed to Stand 'n Seal "Spray-On" Grout Sealer . . . .
>
> 24. At the time that Plaintiff was injured by her use of Stand 'n Seal, Defendants had actual knowledge of the defects herein described, and that said product was dangerous for use by the general public, including the Plaintiff.
>
> 25. After numerous complaints began coming in from consumers, medical professionals, and Poison Control Centers in April/May of 2005, Defendants were acutely aware of health problems to users caused by Stand 'n Seal. Defendants, however jointly and severally, made a conscious decision not to inform the public and potential consumers until, at least, late August 2005 of the adverse health effects caused by using the product, or to notify the public that they had determined to voluntarily recall the product.  Defendant, Home Depot, did not issue a storewide recall of Stand 'n Seal until after August, 2005, despite its actual knowledge of the adverse health effects being suffered by its consumers who bought and/or used the product. Defendants, jointly and severally, in whole or in part, knowingly and intentionally concealed the adverse effects of this defective and hazardous product from the general public, including the Plaintiff.  Defendants' conduct, jointly and severally, resulted in the Plaintiff and many other unsuspecting consumers being injured.
>
> 27. Plaintiff was severely injured as a direct result of using Stand 'n Seal. Plaintiff used the product in the manner intended, marketed, and foreseen by Defendants....

(Am. Compl. ¶¶ 13, 24-25, 27.)  The Amended Complaint goes on to allege that for a period of time between when Defendants were informed of the health problems associated with the product and when the product was recalled, Defendants, jointly and severally, were aware of the health problems associated with the product that were not represented in the labeling, marketing, or advertising.  The Plaintiff alleges that she was injured as a direct result of using the product in the way in which it was marketed.

After reviewing the allegations set forth in the Amended Complaint in the light most

favorable to the Plaintiff and guided by the applicable law, I find that Plaintiff's Amended Complaint contains enough facts to state a claim for unfair or deceptive trade practices under the CCPA that is plausible on its face.

          b.      Whether Plaintiff's Allegations are Pled with Particularity as to Sufficiently Allege a Public Injury to Consumers as a Whole

The Colorado Supreme Court has held that in order to bring a claim pursuant to the CCPA, the plaintiff must establish not only that the defendant engaged in a deceptive trade practice, but also that the defendant's challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property. *Hall*, 969 P.2d at 234. "Thus, if a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Rhino Linings,* 62 P.3d at 149. In *Martinez v. Lewis,* 969 P.2d 213, 221 (Colo. 1998), the Colorado Supreme Court outlined the relevant considerations in determining whether a challenged practice significantly impacts the public within the context of a CCPA claim. "These considerations include (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings,* 62 P.3d at 149.

Based upon my careful review of the Amended Complaint, I find that the Plaintiff satisfies the aforementioned considerations. First, the Plaintiff alleges that on August 31, 2005, the Consumer Product Safety Commission announced a nationwide recall of approximately 300,000 cans of Stand n' Seal. (Am. Compl. ¶ 14.) Secondly, Plaintiff

alleges disparate bargaining power and sophistication between the parties. The Plaintiff alleges that as contracted by Roanoke, Home Depot was the exclusive retailer of the product. (Am. Compl. ¶ 15.) Additionally, Plaintiff alleges that the Defendants were responsible for labeling the product and such labels did not accurately or fully disclose the contents of the product or the potential harm that those contents could cause. (Am. Compl. ¶ 17.) Finally, the Plaintiff alleges that the conduct has impacted large numbers of consumers who purchased the product. In addition to the allegations that 300,000 cans of the product were recalled from consumers across the country, Plaintiff alleges that numerous complaints were received from consumers, medical professionals, and poison control centers. (Am. Compl. ¶ 25.)

After reviewing the allegations in the light most favorable to the Plaintiff, I find that this is not an action designed to address a purely private wrong. I further find that the Plaintiff has alleged sufficient facts to satisfy the requirements set forth in the CCPA. Accordingly, I find that the Roanoke Defendants' motion to dismiss the CCPA claim must be denied.

IV.   CONCLUSION

Based on the foregoing, it is

ORDERED that Roanoke Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) (ECF No. 56) is **GRANTED IN PART and DENIED IN PART**. The motion is granted to the extent that Plaintiff's Gross Negligence/Willful and Wanton Conduct claim and her Consumer Product Safety Act claim are **DISMISSED WITHOUT PREJUDICE**. The motion is denied to the extent that it

seeks dismissal of Plaintiff's CCPA claim.

      Dated:  December 16, 2010

                                                BY THE COURT:

                                                s/ Wiley Y. Daniel  
                                                Wiley Y. Daniel  
                                                Chief United States District Judge